ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOHN ULLOM (CABN 249141)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6471
    John.Ullom@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NICOL PALMA aka Alejandra Nicol Licona-Varela, <br><br> Defendant. | CASE NO 3:23-CR-00218-001-JSC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:        Hon. Jacqueline S. Corley <br> Hearing Date:  November 6, 2024 <br> Hearing Time:  10:00 A.M. |

## I.    INTRODUCTION

The defendant Nicol Palma is a 24-year-old recidivist, Tenderloin drug dealer. Defendant Nicol Palma and her co-Defendant, Jordy Aguilar, both Honduran nationals, were arrested by San Francisco police on July 6, 2023, pursuant to an arrest warrant issued following two "buy walk" operations conducted by SFPD where Palma and Aguilar sold an undercover officer 32.3 grams of fentanyl. Upon their arrest, both Palma and Aguilar had sizable quantities of narcotics on their persons. A subsequent search of their residence revealed more narcotics, over $4,000 in cash, two loaded firearms, and over 400 grams (more than fifteen ounces) of fentanyl. After their arrests, each defendant participated in a Mirandized, recorded interview. Each defendant admitted to selling drugs in the Tenderloin neighborhood of San Francisco. Each defendant also admitted to handling the loaded firearms. Palma

admitted that the cash in defendants' shared room was the proceeds of narcotics sales.

**Narcotics and one of two firearms recovered from defendants' residence**




*See* Pre-Sentence Report [PSR] at ¶ 10-21.

The instant conduct before the Court is the most recent and most troubling in a long line of law enforcement contacts that defendant has accumulated over the prior several years, including repeated arrests by the San Francisco Police Department, including arrests on 12/2/21, 7/20/22, and 9/10/22, for narcotics sales related conduct. *See* PSR ¶ 44-48. Defendant Palma was also removed from the country in August of 2016. PSR ¶ 44.

As the record demonstrates, the defendant continues to engage in dangerous conduct notwithstanding state and federal intervention. U.S. Probation has arrived at a similar conclusion that a custodial sentence is necessary; they recommend 48 months. Based on the nature and circumstances of the offense and the defendant's criminal history, and the relevant 3553(a) factors, the Government submits that a custodial sentence of 70 months imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a) while taking into account the mitigating factors present in this matter.

II.    **OFFENSE CONDUCT**

On June 9, 2023, an undercover officer (UC) with the San Francisco Police Department (SFPD) called Palma and negotiated the purchase of three grams of fentanyl for $90. Palma had provided the UC with her phone number the prior day. The UC agreed to meet Palma at Golden Gate Avenue and Hyde Street.

When the UC approached the meet location, he observed Palma on the northwest corner. Palma motioned towards the UC to have him follow her westbound on Golden Gate Avenue. The UC followed Palma while she met with Joseph Bristol. Palma reached into Bristol's bags, retrieved a scale, opened a white bag of fentanyl removing loose chunks, and placed the chunks on the digital scale. Palma weighed the fentanyl and then poured the fentanyl into a clear sandwich bag that Bristol was holding. Palma then handed the UC the weighed and packaged fentanyl in exchange for $90 in city funds.

The UC then asked Palma about the price for one ounce of regular fentanyl. Palma asked a second male who was standing in the area, later identified as Jordy Aguilar, and Aguilar stated $200 per ounce. The UC told Palma and Aguilar that he would purchase an ounce of fentanyl the following week before walking away from the area. SFPD officers weighed the suspected fentanyl, and it was determined to be 3.09 gross grams. PSR ¶ 10-12.

On June 21, 2023, the UC called Palma and asked to purchase three ounces of fentanyl for $500. Palma agreed and the UC told Palma he would be at Golden Gate Avenue and Hyde Street in the Tenderloin neighborhood in 30 minutes. When Palma and the UC met at the designated location, Palma walked to an alcove where Bristol was standing. Palma removed fentanyl from Bristol's bags and handed it to the UC. The UC handed Palma $500 which she counted. The UC began to walk away when Aguilar walked up to Palma. SFPD officers weighed the fentanyl, and it was determined to be 28.4 gross grams. Two other baggies of suspected fentanyl were weighed at 28.3 grams gross and 28.5 grams gross respectively and both tested as "Clear/Mannitol."

On June 22, 2023, SFPD officers were conducting surveillance on Palma, Aguilar, and Bristol. Officers observed Palma and Aguilar grabbing a white substance believed to be narcotics from a white satchel Bristol was wearing. Aguilar was also seen grabbing a white substance of suspected narcotics from a camo satchel that Bristol was also wearing. Officers observed Palma and Aguilar use a scale to weigh the suspected narcotics. Bristol was subsequently detained and positively identified. Officers searched Bristol's bags and recovered several ounces of fentanyl and methamphetamine packaged for sale. PSR ¶ 13-14.

On July 6, 2023, law enforcement executed a federal search and arrest warrant for Palma, Aguilar, Bristol, a black Mercedes, a gray BMW, and the premises of 6621 Bancroft Avenue in

Oakland, California. During surveillance of the building, officers observed Palma, Aguilar and a female who was later identified as Carla Archaga, and a small female child exit the building and enter the grey BMW. Law enforcement noted that Archaga had been in the area of the controlled buys that were conducted between the UC, Palma and Aguilar. Archaga was seen during physical surveillance grabbing suspected narcotics from the narcotics holder that Palma and Aguilar were both using to hold their suspected narcotics.

Aguilar drove the BMW then double parked in the middle of Foothill Boulevard between 64th Avenue and Havenscourt Boulevard. Palma exited the vehicle with the child and walked into an apartment complex located at 6500-6506 Foothill Boulevard. While Palma was inside the apartment, Aguilar exited the driver seat and went to the liquor store. After several minutes, Aguilar returned to the BMW with Palma who was no longer accompanied by the child. Shortly after, Maxfer Palma, who was later determined to be Palma's cousin, was seen walking out of the apartment complex, walked to the trunk of the BMW, and placed a bag inside. He then entered the backseat of the BMW, and Aguilar drove towards the 580 freeway. Prior to getting on the freeway, the BMW quickly pulled over and Aguilar propped the driver door open and began vomiting. A short time later, another person got into the driver seat and began driving the vehicle.

The BMW was followed to San Francisco. When it was on Elm Street, Palma, Aguilar, Archaga, and Maxfer Palma exited the vehicle and began walking on the north sidewalk of Elm Street towards Franklin. Palma and Aguilar were arrested while Archaga and Maxfer Palma were detained while further investigation was conducted. During a search of Aguilar, law enforcement located fentanyl (122 gross grams) and methamphetamine (44.8 gross grams) on his person. A search of Palma's person yielded fentanyl (96.6 gross grams), methamphetamine (65.2 gross grams), cocaine base (45 gross grams), two cell phones, and a digital scale.

A search of the BMW was conducted, and law enforcement found three money transfers in the center console and the keys to the black Mercedes in the driver's door. A transport search of Archaga was conducted, and law enforcement located methamphetamine (14.7 gross grams), fentanyl (23.4 gross grams), and a digital scale. Suspected narcotics was found inside a backpack that was in the possession of Maxfer Palma.

Law enforcement entered 6621 Bancroft Avenue and did not locate anyone inside the unit. Officers searched the residence and the black Mercedes that was parked almost in front of the building. Inside one of the rooms, indicia for Palma and Aguilar was located.  Also inside that specific room were two loaded firearms (a Smith & Wesson semi-automatic pistol with two clips, one extended, and one white and silver semi-automatic pistol with two clips, one extended), fentanyl (400 gross grams), $4,394 in cash in various denominations, and more money order receipts in different denominations sent to Honduras. Officers also discovered Honduran passports for Palma and Aguilar.  Inside a separate bedroom was indicia for Archaga and $970 in cash in various denominations.

At the Tenderloin police station, interviews were conducted.  In summary, Palma, Aguilar, Archaga, and Maxfer Palma all admitted to possessing the narcotics from their persons and gave specific amounts.  Palma and Aguilar both acknowledged the firearms seized from the bedroom and admitted that they both handled each firearm which belonged to Aguilar.  Palma and Aguilar both admitted that the fentanyl seized from their room belonged to them. PSR ¶ 16-21.

On July 5, 2023, a Criminal Complaint was filed in the Northern District of California alleging the defendant, Nicol Palma, violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 – Possession with Intent to Distribute Fentanyl, Aiding and Abetting.  A Forfeiture Allegation was filed pursuant to 21 U.S.C. § 853(a).

### III.   PROCEDURAL HISTORY

On July 18, 2023, a four-count Indictment was filed in the Northern District of California, charging Nicol Palma a/k/a "Alejandra Nicol Licona-Varela," Jordy Aguilar, Joseph Bristol, and Carla Archaga, with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 – Possession with Intent to Distribute and Distribution of Fentanyl (Counts One and Two), 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Fentanyl (Counts Three), and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Methamphetamine (Count Four).  A forfeiture allegation was also filed pursuant to 21 U.S.C. § 853.  Palma was charged in all four counts.  On July 24, 2024, the defendant pled guilty to Counts One through Four of the Indictment. PSR ¶ 2-3.

There was no plea agreement in this matter.  The sentencing hearing is currently set for November 6, 2024, at 10:00 a.m., before the Honorable Jacqueline S. Corley, United States District

Judge.

## IV. SENTENCING GUIDELINES CALCULATION

The parties reached no plea agreement regarding an adjusted offense level. The calculation from pre-trial services is as follows, and the Government concurs:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(c)(5): | | 30 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 (*e.g.*, use of a firearm) | | +2 |
| c. | Adjustments under U.S.S.G. Ch. 3 (*e.g.*, role in the offense) | | -- |
| d. | Acceptance of Responsibility: | | -3 |
| e. | Adjusted Offense Level: | | 29 |

The government agrees with probation's calculation of the criminal history category of I. PSR ¶ 27-36.

As detailed below, the government recommends a sentence of 70 months—the low end of the guidelines range representing a downward variance to Offense Level 27 from the Adjusted Offense Level 29, which yields a guidelines range of 87-108 months. The government also agrees that the defendant is in Criminal History category I. *See* PSR ¶ 41.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 70 months imprisonment, commensurate with the low end of the guideline range of a downward variance to the Offense Level of 27 and a CHC I.

The nature and circumstances of the offense of conviction are serious. Palma sold fentanyl to an undercover officer on two occasions and possessed fentanyl for sale in the midst of a public health crisis stemming from the use of synthetic opioids and synthetic narcotics. Moreover, she did so despite numerous previous narcotics-related arrests at the state level related to the same category of conduct. The Defendant admitted to law enforcement that she sells dangerous drugs, including fentanyl, on a regular basis. *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs"). The distribution of fentanyl continues to have deadly results and at the time of Defendant's trafficking activity was driving a surge in accidental overdose deaths in San Francisco that is outpacing the hundreds of such annual deaths that have been tracked in recent years.[1] Unless she is deterred and sanctioned, it is foreseeable that Defendant will continue to support herself the way she has been—by selling fentanyl and other drugs. Moreover, Palma's danger to the community goes beyond narcotics trafficking. The presence of two loaded handguns in the defendant's residence suggests that she is prepared to resort to violence should one of her narcotics transactions go poorly. More, the added risk that is posed by having loaded firearms present at a narcotics transaction is significant,

---

[1] Yoohyun Jung, *74 People Died in May in San Francisco from Accidental Overdoses*, S.F. Chron., June 15, 2023 (https://www.sfchronicle.com/projects/2021/san-francisco-drug-overdoses-map/). San Francisco is on pace to have 830 accidental overdose deaths in 2023. *Id.*

especially when defendants are routinely trafficking narcotics in the Tenderloin, an especially volatile neighborhood notorious for its open-air drug market. Finally, the use of a narcotics holder demonstrates both a sophistication, and a willingness to exploit individuals suffering from substance abuse issues to avoid criminal responsibility.

Clearly, repeated interactions with law enforcement have not had a deterrent effect to date. The defendant appears to have no qualms about repeatedly selling and possessing for sale dangerous narcotics or possessing illegal firearms. Her pattern of doing so poses a serious public safety risk.

It is important to consider mitigating factors that exist and the necessity to not impose a sentence that is more than necessary to comply with the strictures of section 3553(a). Defendant is a young woman (24 years old) with both the immaturity and the possibility for change that that represents. PSR at ¶50. She has little formal education, and left school in the sixth. PSR at ¶61. Additionally, it appears that Defendant had a disadvantaged background, and is the primary caretaker for her two minor children. PSR at ¶90.

The government's recommendation of 70 months takes these factors into consideration. A custodial sentence of 70 months imprisonment balances the aggravating and mitigating factors noted in the PSR. The government believes this sentence will provide the defendant an opportunity to reflect on the dangerous, potentially fatal consequences of her actions and protect the public from an individual who has proven herself committed to a lifestyle peddling dangerous and illegal narcotics while possessing illegal firearms. A custodial sentence of 70 months is not insignificant, but nonetheless a downward variance from the Guidelines and thus balances both accountability and deterrence, while leaving room for the need for rehabilitation and the possibility for change while defendant is still a young woman with her life in front of her. This sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

DATED: October 30, 2024                                  Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

   /s/ John Ullom
JOHN ULLOM
Special Assistant United States Attorney